**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

KIMBERLY W.,

                        Plaintiff,

      v.                                           6:20-CV-925
                                                        (DJS)

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security,*[1]

                        Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| MEGGESTO, CROSSETT<br>& VALERINO, LLP<br>Attorney for Plaintiff<br>313 East Willow Street, Suite 201<br>Syracuse, NY 13203 | KIMBERLY A. SLIMBAUGH, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>Attorney for Defendant<br>J.F.K. Federal Building - Room 625<br>15 New Sudbury Street<br>Boston, MA 02203 | HUGH DUN RAPPAPORT, ESQ. |

**DANIEL J. STEWART
United States Magistrate Judge**

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted as Defendant here pursuant to FED. R. CIV. P. 25(d). The Clerk is directed to modify the docket accordingly.

## MEMORANDUM-DECISION AND ORDER[2]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 15 & 20. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied. The Commissioner's decision is reversed and remanded for further proceedings consistent with this decision.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1976. Dkt. No. 14, Admin. Tr. ("Tr."), p. 199. Plaintiff reported that she has a GED and has completed "some college." Tr. at p. 46. She has past work experience as a stocker at Walmart. Tr. at pp. 46-47. Plaintiff alleges disability due to social anxiety disorder and depression. Tr. at p. 226.

### B. Procedural History

Plaintiff applied for disability and disability insurance benefits on April 24, 2017. Tr. at p. 64. She alleged a disability onset date of September 30, 2015. Tr. at p. 199.

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 7 & General Order 18.

Plaintiff's application was initially denied on June 29, 2017, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 94, 102. Plaintiff appeared at a hearing before ALJ John P. Ramos on February 14, 2019. Tr. at pp. 42-63. A separate hearing was held on June 4, 2019, during which a vocational expert testified. Tr. at pp. 29-40. On June 21, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 7-19. On July 9, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-3.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020 and that she had not engaged in substantial gainful activity since September 30, 2015, the alleged onset date. Tr. at p. 12. Second, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; obesity; chronic obstructive pulmonary disease (COPD); depression; anxiety disorder; bipolar disorder II; and post-traumatic stress disorder (PTSD). *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 13. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform less than sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a), except that Plaintiff can lift

3

and carry ten pounds occasionally and less than ten pounds frequently, can sit six hours out of an eight-hour workday, and stand or walk for two hours total during the day. Tr. at p. 14. The ALJ stated that Plaintiff had the ability to understand and follow simple instructions and directions, perform simple tasks both independently and with supervision, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule. *Id.* He also found Plaintiff could:

> relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks, i.e., she can ask for help when needed, accept instructions or criticism from supervisors, handle conflicts with others, state her own point of view, initiate or sustain a conversation, and understand and respond to physical, verbal and emotional social cues associated with simple work but she should avoid work requiring more complex interaction, negotiation or joint efforts with coworkers to achieve work goals, and she should not interact with the public. In addition, she can handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work, and she should work in a position where she is not responsible for the work of or required to supervise others; and she should work in a position with little change in daily work processes or routine; and should avoid exposure to concentrated respiratory irritants.

*Id.*

Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. at p. 18. Sixth, the ALJ found that Plaintiff was categorized as a "younger individual" at the time of the alleged disability onset date. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff

could perform. *Id.* The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 18-19.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is

> whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff presents three claims of error for the Court's review. Dkt. No. 15, Pl.'s Mem. of Law at pp. 10-19. Plaintiff contends first that the ALJ committed reversible error in his evaluation of the opinion evidence from her treating mental health provider; second, that he erred in his evaluation of her RFC; and third, that his Step 5 determination was not supported by substantial evidence. Pl.'s Mem. of Law at pp. 10-19. In response, Defendant asserts that the ALJ permissibly discounted the treating provider's "checklist," that the RFC was adequately supported, and that the Step 5

determination was permissibly based upon the vocational expert's testimony. Dkt. No. 20, Def.'s Mem. of Law at pp. 2-21.

Plaintiff's first claim of error relates to the ALJ's evaluation of an opinion from her treating mental health provider. Plaintiff claims that the RFC was not supported by substantial evidence because the ALJ improperly discounted the opinion of Kaitlin Jones, LCSW. As a licensed clinical social worker, Jones is not considered an acceptable medical source under Social Security regulations. 20 C.F.R. § 416.902(a). However, as a licensed healthcare worker working within her scope of practice, she is considered a medical source rather than a nonmedical source. 20 C.F.R. § 416.902(i),(j).

Plaintiff's claim was filed after March 27, 2017, and therefore, the analysis is governed by 20 C.F.R. § 404.1520c, which describes how the Social Security Administration presently considers and articulates medical opinions. The SSA no longer defers or gives any specific evidentiary weight to any medical opinions, including those from the claimant's treating medical sources. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must now evaluate the medical opinions and prior medical findings by considering a list of five factors: the supportability of the opinion, consistency with the record and other sources, the relationship that the writer of the opinion has with the claimant, the specialization of the writer, and "other factors." 20 C.F.R. § 404.1520c(c)(1-5). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must 'still articulate how [he or she] considered the medical

opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776 at *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1)). Of the five factors, the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5853 (Jan. 18, 2017); *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776 at *5.

A medical opinion is a statement from a medical source about "what you can still do despite your impairments and whether you have one or more impairment-related limitations or restrictions. . . ." 20 C.F.R. § 404.1513(a)(2). The ALJ must consider and articulate how supportable the medical opinion is when compared to the rest of the record. 20 C.F.R. § 404.1520c(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion . . . will be." *Id.* The Administrative Law Judge must additionally consider how *consistent* the opinion is with other evidence from other medical or nonmedical sources. 20 C.F.R. § 404.1520c(2). While consistency and supportability are the two most important factors, the ALJ must also consider the medical source's relationship with the claimant, evidenced by factors such as length of treatment and frequency of examinations, among other things, as well as any type of specialization that the medical provider may have. While an opinion from a treating provider is no longer presumptively determinative, "[t]he new regulations

9

cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021).

Moreover, the Second Circuit has recently clarified that an opinion by a treating provider should not be discounted solely because it is provided on a check-box form. *Colgan v. Kijakazi*, 22 F.4th 353, 360-61 (2d Cir. 2022) ("Needless to say, *Halloran* did not then and does not now stand for the rule that the evidentiary weight of a treating physician's medical opinion can be discounted by an ALJ based on the naked fact that it was provided in a check-box form."). Rather, if the opinion is substantiated by clinical findings and other evidence in the record, the format of the opinion should not affect the weight to be given. *Id.* at 361. ("[W]e take this occasion to reassert and clarify that the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert…").

The source opinion at issue here was provided by Kaitlin Jones, LCSW, one of Plaintiff's treating mental health providers. The ALJ found her opinion to be less persuasive than that of the Agency experts, due in part to her "lesser specialty" and apparently in large part due to its check-box format.[3] Tr. at p. 17. While it is true that this opinion came from a licensed clinical social worker rather than a doctorate-level

---

[3] The ALJ stated "the document consists of brief check-box type answer list that fails to sufficiently cite to specific clinical and diagnostic findings to support the opinion." Tr. at p. 17.

practitioner, it is also true that Jones treated the Plaintiff on a continuous weekly to bi-weekly basis from June 6, 2017 until October 16, 2018, the date the opinion was signed. Tr. at pp. 417-422. As a result, Jones would have been very familiar with Plaintiff's mental condition and symptoms over time. Moreover, Jones did not limit her opinion to merely checking the boxes without further explanation. For example, when asked to describe the clinical findings that demonstrate the severity of the Plaintiff's mental impairments and symptoms, she stated: "Client reports struggles w/ social interactions & inabilities at tolerating distress, which have negatively impacted interpersonal relationships & her abilities to follow through w/ ADLs." Tr. at. p. 417. Later, she described that Plaintiff's "anxiety can make it difficult for [Plaintiff] to remember instructions, maintain attention, work w/ others, & manage work related stress (per her report)." Tr. at p. 419.

The ALJ noted that "[t]he opinion sets forth an assessment of limitations not consistent with the other sources such as the Agency experts and not consistent with the overall record, which fails to support the extreme limitations reported in the opinion." Tr. at p. 17. This was the extent of the ALJ's explanation as to why he discounted Plaintiff's treating therapist's opinion. As the Commissioner correctly notes, the ALJ was under no obligation to accept the opinion of Plaintiff's treating provider. However, he was obligated to explain his reasons for discounting the opinion in sufficient detail to allow this Court to conduct a meaningful review of this decision. The ALJ did not cite to any specific part of this provider's opinion that he felt was inconsistent with the

11

record as a whole. After conducting a review of the record, the asserted lack of consistency is not readily apparent to the Court.

The ALJ indicated that his decision was based "in particular on the persuasive opinions set forth in writing by the State Agency evaluator/expert of record" and on a consultative examiner's opinion. Tr. at p. 13. The ALJ's reliance on a one-time examiner's assessments of Plaintiff's mental health is problematic because Plaintiff alleges a longstanding pattern of mental health difficulty.

"[A]n ALJ commits legal error in resting his disability determination on 'a one-time snapshot of a claimant's status' because that episode 'may not be indicative of her longitudinal mental health.'" *Colgan v. Kijakazi*, 22 F. 4th at 362 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019)). "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F. 3d at 97 (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

In order to formulate the RFC, the ALJ relied in large part on the opinion of consultative psychiatric examiner Sara Long, Ph.D. Although Dr. Long opined that Plaintiff would not have limitations with maintaining attention and concentration and maintaining a regular schedule, she also stated that "[r]esults of the present evaluation appear to be consistent with psychiatric and history of substance abuse problems which

12

interfere with her ability to function on a regular basis." Tr. at p. 384. Although Dr. Long's opinion states that Plaintiff would have lesser limitations than those opined by treating provider Jones, the report still acknowledges the presence of severe mental health impairments interfering with Plaintiff's ability to function. Dr. Long indicated that Plaintiff's "[p]rognosis is good, given consistent psychotherapy and motivation to acquire skills as productive interventions are available. However, time might be required due to severity and long history of symptoms." Tr. at p. 384. As a result, it is not entirely clear how the opinion of a one-time consultative examiner was more consistent with the overall record than that of Plaintiff's treating mental health provider.

For instance, although the ALJ appears to have picked out a statement from treatment notes written by Deanna Raymond, P.A., that Plaintiff enjoyed a vacation down south, the same treatment notes state that Plaintiff's "[m]ood is described as 3-4/10 most of the time. She doesn't feel that 'happy' is real. . . She endorses hypersomnia, crying, sadness, decreased motivation, anhedonia, and decreased self care when depressed. She has felt suicidal on and off…Her mood fluctuates a great deal. Often for no reason. Affect is congruent with mood." Tr. at p. 554. Cycles of improvement are a common occurrence in mental illness, and as such, isolated instances of improvement cannot provide a basis for concluding that a claimant is able to work. *Estrella v. Berryhill*, 925 F. 3d at 97. The Court finds that remand is necessary in order for the ALJ to more fully explain his reasons for discounting the opinion of Plaintiff's treating mental health provider. On remand, the ALJ should identify specific inconsistencies, if

any, that he observes between that opinion and the medical record and should not discount the opinion merely because of its format. This is not to say that on remand, the ALJ could not ultimately weigh the evidence in a similar fashion.

Plaintiff's second claim of error is based upon the ALJ's supposed failure to consider her ability to sustain work activity. Although it is not entirely clear based upon Plaintiff's submissions, it appears that she is claiming generally that the ALJ erred in his formulation of her RFC. Given that the Court has ordered remand for the ALJ to reassess Plaintiff's limitations, the Court will not address this claim of error further.

Finally, Plaintiff's third claim of error relates to her contention that the ALJ's Step 5 determination was not supported by substantial evidence because the hypothetical posed to the vocational expert did not include a respiratory limitation, and because the vocational expert had never actually placed anyone in the jobs at issue. As to the first claim of error, Plaintiff argues, among other things, that because the hypothetical posed to the vocational expert involved the term "concentrated" respiratory irritants rather than "respiratory irritants" more broadly, that the subsequent determination was not based on substantial evidence. Pl.'s Mem. of Law at pp. 17-18. This argument is unavailing. Plaintiff herself stated that she rarely uses her inhaler, Pl.'s Mem. of Law at p. 17, and the ALJ incorporated a restriction in the RFC that stated that Plaintiff must "avoid exposure to concentrated respiratory irritants." Tr. at p. 14. Plaintiff has failed to establish any error by the ALJ on this point that resulted in prejudice.

As to the second claim of error on this matter, Plaintiff claims that because "the VE admitted that he had not placed anyone in the jobs identified as matching the RFC, nor had he observed any of the jobs identified, his testimony is not reliable," and as a result, the ALJ's Step 5 determination was not supported by substantial evidence. Pl.'s Mem. of Law at pp. 18-19. The Court is unaware of any caselaw or precedent requiring that the vocational expert personally and physically observe the jobs identified or that the expert have placed individuals in those jobs. Nor does Plaintiff cite to any such caselaw supporting that proposition. As a result, the Court finds that this too cannot be a basis for a claim of error and so further analysis on this issue is unnecessary on remand.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REVERSED** and the case is **REMANDED** pursuant to sentence four for further proceedings; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: February 24, 2022
      Albany, New York

 

_____
Daniel J. Stewart
U.S. Magistrate Judge